# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE GADDY, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILA. POLICE DEP'T et al., | : | No. 14-3435 |
| *Defendants*. | : | |

PRATTER, J.                                                                                                                 JUNE 4, 2015

## MEMORANDUM

### I. INTRODUCTION

Terrance Gaddy is suing the City of Philadelphia Police Department and Philadelphia Police Officers Matthew Winscom and Michael Chichearo. His original Complaint (Docket No. 3) alleged that the Defendants violated 42 U.S.C. § 1983 by conducting an illegal search and seizure, using excessive force, violating his due process rights, applying cruel and unusual punishment, engaging in ethnic and racial profiling, and being deliberately indifferent to constitutional violations. The Court granted Defendants' Motion to Dismiss (Docket No. 12) on the grounds that Mr. Gaddy's claims were barred by the statute of limitations. However, the Court granted leave for Mr. Gaddy to amend his complaint and plead additional facts in support of his argument that the doctrine of fraudulent concealment tolled the statute of limitations. Mr. Gaddy filed an Amended Complaint (Docket No. 24), and Defendants filed a second Motion to Dismiss (Docket No. 27), renewing their argument that Mr. Gaddy's claims are barred by the statute of limitations.

## II. ALLEGATIONS IN THE AMENDED COMPLAINT

On September 20, 2011, in Philadelphia, Mr. Gaddy, an African American male in possession of two weapons, was riding a bicycle when he noticed Officers Winscom and Chichearo, both of whom are white, "staring at him, as if profiling him." (Am. Compl. ¶ 13). After the officers approached him, Mr. Gaddy fled on his bicycle. Officer Chichearo, in his police car, pursued Mr. Gaddy into an alleyway near the 5200 block of Saul Street. Officer Chichearo's car struck the rear of Mr. Gaddy's bicycle, throwing Mr. Gaddy to the ground. Mr. Gaddy alleges that the officers subsequently assaulted him while he was on the ground, and that he drifted in and out of consciousness during the alleged assault. According to Mr. Gaddy, the officers removed the bicycle from the scene of the incident and discovered that he possessed two weapons only after they had assaulted him.

Mr. Gaddy suffered a contusion within his right frontal lobe, a slight subretinal hemorrhage, and, allegedly, memory loss, among other injuries. Mr. Gaddy claims that the memory loss affected his recollection of the September 20, 2011 incident.

Mr. Gaddy was arrested on the day of the incident and was charged with numerous crimes. There was a preliminary hearing on November 17, 2011. At that hearing, Officer Chichearo testified that the officers approached Mr. Gaddy because they saw a bulge in his waistband, but that Mr. Gaddy fled on foot. He further testified that Mr. Gaddy pointed a gun at Officer Chichearo's police car during the pursuit, at which time Officer Chichearo used his police car to strike Mr. Gaddy. According to Officer Chichearo's testimony, only he, Officer Winscom, and Mr. Gaddy were in the alley at the time of the events at issue, and the officers found two firearms on or near Mr. Gaddy while searching him as he lay on the ground.

Mr. Gaddy claims that he only first learned of the actual cause of his injuries in early 2013, when he received a letter from Zorangelie Hernandez, who claimed to be a witness to Mr. Gaddy's arrest and beating. Mr. Gaddy eventually secured sworn statements from Ms. Hernandez, as well as from Yashira Hernandez and Emanuel Hernandez, two other witnesses who claimed to have seen the events of September 20, 2011. Mr. Gaddy attached those statements to the Amended Complaint.

### III.  LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Although Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint, and all reasonable inferences that may be drawn from them, and view them in the light most favorable to the plaintiff. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).

## IV. DISCUSSION

Defendants' motion to dismiss argues that Mr. Gaddy's claims are barred by the statute of limitations. Mr. Gaddy's state law claims are governed by a two-year statute of limitations governing torts such as assault and battery . *See* 42 Pa. Cons. Stat. § 5524(1)-(2), (7). Because "courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 250 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)), Mr. Gaddy's claims under § 1983 are similarly governed by a two-year statute of limitations. The incident occurred on September 20, 2011, and Mr. Gaddy filed his original Complaint more than two years later on June 17, 2014. Thus, based on the chronological information, the claim appears to be untimely.

Mr. Gaddy argues, however, that the statute of limitations should be tolled under Pennsylvania's doctrine of fraudulent concealment. The doctrine of fraudulent concealment tolls the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985). For the doctrine of fraudulent concealment to apply, a plaintiff must allege facts to suggest "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of [his] claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to [his] lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006). There must be an affirmative and independent act of concealment for this doctrine to apply. *See Gee v. CBS, Inc.*, 471 F. Supp. 600, 623 (E.D. Pa. 1979). "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Fine v. Checcio*, 870 A.2d

4

850, 860 (Pa. 2005). The doctrine of fraudulent concealment tolls the statute of limitations until the plaintiff "knew or using reasonable diligence should have known of the claim." *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir. 1990). The plaintiff bears the burden of pleading facts sufficient to establish fraudulent concealment by "clear, precise, and convincing evidence." *See Fine*, 870 A.2d at 860.

The doctrine may apply if the plaintiff was misled from discovering the true cause of his injuries. *See Vitalo v. Cabot Corp.*, 399 F.3d 536, 543 (3d Cir. 2005); *In re TMI*, 89 F.3d 1106, 1117 (3d Cir. 1996). Indeed, misrepresentations by the police suggesting that they did not engage in misconduct may toll the statute of limitations under the doctrine of fraudulent concealment. In *Swietlowich v. Bucks County*, 610 F.2d 1157 (3d Cir. 1979), the plaintiff's husband committed suicide while in police custody, and the police told the plaintiff that they checked on him frequently. The plaintiff did not file suit against the police department until four years after her husband's death, when a newspaper article asserted that the police had falsified records of her husband's confinement. The Third Circuit Court of Appeals found that the statute may have been tolled "by police misrepresentation of diligence in caring for their prisoner" and the district court's instructions to the contrary constituted error. *Id.* at 1162. The appellate court explained, "To establish her case, plaintiff had to prove that she delayed bringing her suit because she reasonably believed that the police officers' conduct was not actionable based on their false statements of adequate inspections and of having done all that they could." *Id.* at 1163. There is no question that the plaintiff in *Swietlowich* knew about the alleged injury (i.e., her husband's suicide), but the Court concluded that the police's misrepresentations to her could have reasonably misled her as to the true cause of that injury, so the statute of limitations may have been tolled.

Here, Mr. Gaddy argues that Officer Chichearo's testimony at Mr. Gaddy's November 17, 2011 preliminary hearing improperly delayed Plaintiff's appropriately diligent pursuit of his claims in two ways. First, to the extent Mr. Gaddy claims that his constitutional rights were violated when Officer Chichearo knocked him off a bicycle using a police vehicle, Mr. Gaddy claims that Officer Chichearo's testimony improperly concealed the fact that Mr. Gaddy was fleeing from the police on a bicycle rather than on foot. However, Mr. Gaddy knew from Officer Chichearo's testimony and from his medical documentation that he was hit by a car on September 20, 2011. (*See* Am. Compl. Ex. 1 at 2, Ex. 2 at 6:4-6). And it is clear from the transcript of the preliminary hearing that Mr. Gaddy suspected that he was riding a bicycle during his encounter with the Defendants. (*See* Am. Compl. Ex. 2 at 14:11-14). As a result, there was no reason for Mr. Gaddy to delay his investigation of the circumstances surrounding any injuries that he allegedly suffered when Officer Chichearo hit him with the police vehicle. Through the exercise of due diligence in the course of that investigation, Mr. Gaddy could have discovered that he was riding a bicycle at the time of the incident. In other words, Mr. Gaddy's alleged ignorance as to any claim arising from the fact that he was riding a bicycle at the time of the incident is attributable to his "lack of reasonable due diligence in attempting to uncover the relevant facts" underlying his claim rather than Officer Chichearo's allegedly misleading testimony. *Cetel*, 460 F.3d at 509. Consequently, the doctrine of fraudulent concealment cannot toll the statute of limitations with respect to any claim based on injuries that Mr. Gaddy allegedly sustained from being knocked off his bicycle.

Second, however, Mr. Gaddy argues that Officer Chichearo's testimony improperly concealed the fact that officers assaulted him while he lay on the ground unconscious. At the preliminary hearing, Officer Chichearo testified under oath that after he knocked Mr. Gaddy to

the ground with his police car, he quickly got out of the car, recovered a handgun from near Mr. Gaddy, and handcuffed Mr. Gaddy. (*See* Am. Compl. Ex. 2 at 5:22-6:10). According to Officer Chichearo's testimony, Officer Winscom discovered a second weapon on Mr. Gaddy's person after Mr. Gaddy had been handcuffed. (*See* Am. Compl. Ex. 2 at 6:11-14). Although Officer Chichearo summarized the entirety of his encounter with Mr. Gaddy under oath, he never once mentioned that officers used force against Mr. Gaddy while he lay on the ground after being hit with the police vehicle. Likewise, Officer Chichearo stated that Officer Winscom was the only other witness to the events, but Mr. Gaddy allegedly later learned of third party witnesses who tell a different story of what happened.

Assuming the truth of the allegations in Mr. Gaddy's Amended Complaint, it is plausible that Officer Chichearo's testimony hid, or at least materially obscured, from Mr. Gaddy the facts and potential witnesses that would have otherwise put him on notice that his constitutional rights had been violated when police officers beat him while he lay on the ground unconscious. *See Swietlowich*, 610 F.2d at 1162 (quoting *Deemer v. Weaver*, 187 A. 215, 216 (1936)). Indeed, the fact that Mr. Gaddy's injuries are alleged to be consistent with injuries sustained when being struck by a police vehicle could have made Officer Chichearo's alleged misrepresentations more powerful. *See Vitalo*, 399 F.3d at 543 ("If a person knows of an injury but is given an incorrect, but nevertheless reasonable, diagnosis, that person may be misdirected as to the injury's cause [and] the statute of limitations might not begin to run until the injured person is given a correct diagnosis or should otherwise know the true cause (in light of the totality of the circumstances)."). Ordinarily, alleged misrepresentations regarding an incident involving the use of force would not serve to toll the statute of limitations because the injured party would be aware of the events that transpired. However, Mr. Gaddy alleges that he was unconscious during

7

the incident and lost his memory of that event. (*See* Am. Compl. ¶¶ 20-23, 40). These allegations are plausible in light of the factual allegations and attachments to the Amended Complaint regarding the treatment Mr. Gaddy received for head trauma. (*See* Am. Compl. ¶ 28, Ex. 1). The Court therefore finds that the doctrine of fraudulent concealment may toll the statute of limitations with respect to Mr. Gaddy's claims arising from the alleged use of force against him while he lay on the ground unconscious.[1]

At oral argument, Defendants argued that the doctrine of fraudulent concealment was inapposite because Officer Chichearo did not engage in any affirmative act of concealment. In general, "in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Baselice v. Franciscan Friars Asusmption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super. Ct. 2005) (quoting *Kingston Coal Co. v. Felton Mining Co., Inc.*, 690 A.2d 284, 290 (Pa. Super. Ct. 1997)). "Mere silence in the absence of a duty to speak . . . cannot suffice to prove fraudulent concealment." *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992) (citing *Smith v.* Renaut, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)).

The Court disagrees with Defendants argument for three reasons. First, Officer Chichearo may have made an affirmative misrepresentation when he said that Officer Winscom was the only other witness to the incident. (*See* Am. Compl. Ex. 2 at 8:19-20). The Amended Complaint mentions at least three third-party witnesses who claim to have seen Mr. Gaddy's encounter with the police and tell stories that conflict with Officer Chichearo's version of events. Assuming the

---

[1] Whether or not the circumstances of this case actually toll the statute of limitations is a question of fact, not a question suitable for disposition as a matter of law at this stage of the litigation. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301-02 (3d Cir. 2010) ("[B]ecause the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.").

truth of the allegations in the Amended Complaint, it is plausible that Mr. Gaddy did not search for additional witnesses to the incident (and therefore failed to discover the facts underlying the claims in this lawsuit) in reliance on Officer Chichearo's affirmative testimony that there were no such witnesses. Thus, Officer Chichearo's testimony at the preliminary hearing may have been an "affirmative independent act of concealment upon which the plaintiff justifiably relied." *Baselice*, 879 A.2d at 278.

Second, Officer Chichearo testified under oath. (*See* Am. Compl. Ex. 2 at 4:12-13). Testimony under oath is a serious matter and should be understood and treated as such. Swearing to testify truthfully, Officer Chichearo had a duty to tell the whole truth and nothing but the truth. *See* Pa. R. Evid. 603. Pursuant to that duty, Officer Chichearo described what appears to be the entirety of his encounter with Mr. Gaddy, but may have failed to mention that officers used force against Mr. Gaddy while Mr. Gaddy lay on the ground unconscious or that others were present at the time of the incident. Accepting the allegations of the Amended Complaint as true at this stage of the litigation, such selective omissions could qualify as an "affirmative independent act of concealment upon which the plaintiff justifiably relied," *Baselice*, 879 A.2d at 278, in light of the well-established duty under Pennsylvania law to provide accurate and complete testimony under oath. *See* Pa. R. Evid. 603 (noting that the oath to testify truthfully "must be in a form designed to impress that duty on the witness's conscience"); 42 Pa. Cons. Stat. Ann. § 5901 ("Every witness, before giving any testimony shall take an oath . . . by laying the hand upon an open copy of the Holy Bible, or by lifting up the right hand and pronouncing or assenting to the following words: 'I, A.B., do swear by Almighty God, the searcher of all hearts, that I will [testify truthfully], and that as I shall answer to God at the last great day.'"); *see also* Act of March 21, 1772, 1 Sm. L. 387, § 1 (same).

9

Third, notwithstanding the general duty to testify truthfully, Officer Chichearo may have also been subject to a special duty to testify regarding the use of force against Mr. Gaddy while Mr. Gaddy was unconscious. When presenting evidence to demonstrate the existence of probable cause, state actors owe a duty under the U.S. Constitution not to "knowingly and deliberately, or with a reckless disregard for the truth, [make] false statements or omissions that create a falsehood" when "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (internal citations and quotation marks omitted). Such omissions may be material and alter the outcome of a probable cause determination if "the officer withheld a highly relevant fact within his knowledge where any reasonable person would have known that this was the kind of thing the judge would wish to know" and disclosure of the omitted information would demonstrate that probable cause did *not* exist. *Commonwealth v. Taylor*, 850 A.2d 684, 689 (Pa. Super. Ct. 2004) (internal quotation marks omitted); *Wilson*, 212 F.3d at 787 (same). Mr. Gaddy alleges that the officers discovered weapons only after they beat him. Thus, assuming the truth of the allegations in the Amended Complaint, Officer Chichearo had a special duty to tell the presiding judge at the preliminary hearing about the allegedly unjustified use of force that led to the discovery of the weapons, as that information is certainly "the kind of thing the judge would wish to know," *Taylor*, 850 A.2d at 689, and may have precluded a finding that probable cause existed.

Although "all storytelling involves an element of selectivity," *Wilson*, 212 F.3d at 787, Officer Chichearo had a duty to testify at the preliminary hearing about the use of force against Mr. Gaddy and the possible existence of additional witnesses. Therefore, Mr. Gaddy may proceed to try to use Officer Chichearo's testimony to prove that the doctrine of fraudulent concealment should toll the statute of limitations.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. The Court will dismiss any claims arising from the alleged use of a police vehicle to knock Mr. Gaddy off his bicycle, but it will not dismiss claims arising from the alleged use of force against Mr. Gaddy while he lay on the ground unconscious.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE