# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRANCE GADDY,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER MATTHEW WINSCOM et al.,** | : | **No. 14-3435** |
| *Defendants.* | : | |

P RATTER, J.                                                                          O CTOBER 14, 2016

## MEMORANDUM

Terrance Gaddy sued the City of Philadelphia ("the City"), Officer Matthew Winscom, Officer Michael Chichearo, and John Does 1-7 alleging (i) a *Monell* claim against the City and (ii) violations of the Fourth Amendment and claims for intentional torts against the individual defendants. Generally, Mr. Gaddy alleges that he was struck by a police vehicle while riding a bicycle and was then directly beaten by the officers once the police car knocked him off his bicycle. For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I.     F ACTUAL B ACKGROUND[1]

Mr. Gaddy was arrested on September 20, 2011 for a number of crimes, including violations of the Uniform Firearms Act ("UFA") and aggravated assault. Subsequently, Mr. Gaddy pled guilty to aggravated assault and violations of the UFA and served three and a half years in prison. At the time of Mr. Gaddy's arrest, he was armed with two handguns and was struck by a police vehicle driven by Officer Chichearo. Mr. Gaddy does not recall the

---

[1]     All facts are undisputed unless otherwise noted, in which case they are interpreted in the manner most favorable to Mr. Gaddy.

incident that is the subject of this action and does not remember encountering any police officer on the night of the incident in question.

In their Incident Reports, the defendant officers wrote that Mr. Gaddy was "running" at the time of the incident (Opp'n to Mot. for Summ. J. Ex. 12, Doc. No. 54), and "injured [his] ankle during [a] foot pursuit" (Opp'n to Mot. for Summ. J. Ex. 13). During an investigation interview, Officer Chichearo stated that Mr. Gaddy was "running on the passenger side of [his] vehicle" when the officer used his vehicle to knock Mr. Gaddy to the ground. Opp'n to Mot. for Summ. J. Ex. 14.

During Mr. Gaddy's November 17, 2011 Preliminary Hearing (the "Hearing") in Philadelphia Municipal Court, Officer Chichearo testified that: (i) other than Officer Winscom and Mr. Gaddy, there were no other people in the alleyway when he hit Mr. Gaddy with his car; (ii) Mr. Gaddy was running on foot when struck by the police vehicle; and (iii) Mr. Gaddy was not on a bicycle. During his deposition, Officer Chichearo testified that (i) Officer Ryan Pownall arrived on the scene within seconds and (ii) he assisted in hand-cuffing Mr. Gaddy. Officer Winscom testified during his deposition that (i) he jumped on Mr. Gaddy and hand-cuffed him; (ii) Officer Pownall arrived on the scene while Officer Winscom was still on the ground with Mr. Gaddy; and (iii) a crowd formed after Mr. Gaddy was struck by the police vehicle. Officer Pownall testified during his deposition that he recalled that Mr. Gaddy was on a bicycle.

In May and June 2012, Mr. Gaddy requested from the Defender Association of Philadelphia various materials relating to his criminal case. Opp'n to Mot. for Summ. J. Exs. 7, 8. In late June 2012, the Defender Association provided Mr. Gaddy with "the discovery and preliminary hearing notes" he requested. Opp'n to Mot. for Summ. J. Ex. 9. Mr. Gaddy testified during his deposition that he did not realize that the Defendants' story was "not adding up" until

"2013 when [he] got the real event that happened, when somebody actually said they [saw him] on the bike." Opp'n to Mot. for Summ. J. Ex. 5 at 73:18-75:12. Mr. Gaddy testified that he continued to investigate what happened to him on the day in question by enlisting family members to track down potential witnesses. An alleged witness to the incident, Yashira Hernandez Perez, testified that she witnessed officers (i) searching and beating Mr. Gaddy and (ii) removing a bicycle from underneath a police vehicle while Mr. Gaddy was on the ground.

## II.   PROCEDURAL BACKGROUND

Mr. Gaddy initiated this action on June 11, 2014 by filing an application to proceed *in forma pauperis*. Following the Court's Order granting Mr. Gaddy leave to proceed *in forma pauperis*, Mr. Gaddy filed his initial Complaint on June 17, 2014. Defendants then moved to dismiss Mr. Gaddy's Complaint. The Court granted Defendants' Motion to Dismiss and further granted Mr. Gaddy's request for leave to amend his Complaint. Mr. Gaddy then filed his Amended Complaint, and Defendants again moved to dismiss. The Court granted Defendants' Motion to Dismiss with respect to all claims arising out of the alleged use of a police vehicle to knock Mr. Gaddy off his bicycle and denied Defendants' Motion to Dismiss with respect to all claims arising from the alleged use of force against Mr. Gaddy while he lay on the ground. Thereafter, the Court granted Mr. Gaddy leave to file a Second Amended Complaint. Mr. Gaddy filed his Second Amended Complaint and the City moved to dismiss Mr. Gaddy's *Monell* claim, which the Court granted. Officers Chichearo and Winscom have now moved for summary judgment.

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id*.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  Summary judgment is appropriate if the non-moving party fails to rebut the movant's assertion(s) by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party, in this instance, Mr. Gaddy.  *Anderson*, 477 U.S. at 255.

## IV.     DISCUSSION

Officers Chichearo and Winscom argue that (i) all of Mr. Gaddy's claims are barred by the statute of limitations, (ii) the record does not support Mr. Gaddy's claim that the doctrine of fraudulent concealment tolls the statute of limitations, and (iii) the record does not support Mr. Gaddy's claim that Officers Chichearo and Winscom assaulted him on September 20, 2011.

Mr. Gaddy's state law claims are governed by a two-year statute of limitations applicable to torts such as assault and battery.  *See* 42 Pa. Cons. Stat. § 5524(1)-(2), (7).  Because "courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations

for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 250 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)), Mr. Gaddy's claims under § 1983 are similarly governed by a two-year statute of limitations. The events giving rise to Mr. Gaddy's claim arose on September 20, 2011 and Mr. Gaddy did not initiate this action until June 11, 2014,[2] just shy of three years from the date of the events at issue. Accordingly, Mr. Gaddy's claims would appear to be untimely unless state tolling principles work to save Mr. Gaddy's claims. *See Bohus v. Beloff*, 950 F.3d 919, 924 (3d Cir. 1991). Because Mr. Gaddy has not put forth sufficient evidence to show he is entitled to equitable tolling, the Court will grant Defendants' Motion for Summary Judgment.

Pennsylvania courts recognize the doctrine of fraudulent concealment. *Ciccarelli v. Carey Can. Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985). The doctrine tolls the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." *Id.* For the doctrine of fraudulent concealment to apply, a plaintiff must allege facts to suggest "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of [his] claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to [his] lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006). "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied." *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 291 (Pa. Super. 1997). "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes

---

[2]    Mr. Gaddy initiated this action by filing an application to proceed *in forma pauperis*. He filed his Complaint on June 17, 2014. "[T]he statute of limitations is tolled when the compliant and the [in forma pauperis] motion are filed . . . ." *Scare v. Phila. Gas Works*, 202 F.R.D. 148, 151 (E.D. Pa. 2001).

an unintentional deception." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005).  The doctrine of fraudulent concealment tolls the statute of limitations until the plaintiff "knew or using reasonable diligence should have known of the claim." *Vernau v. Vic's Market, Inc.*, 896 F.2d 43, 46 (3d Cir. 1990).  The plaintiff bears the burden of pleading facts sufficient to establish fraudulent concealment by "clear, precise, and convincing evidence." *See Fine*, 870 A.2d at 860. The doctrine may apply if the plaintiff was misled from discovering the true cause of his injuries. *See Vitalo v. Cabot Corp.*, 399 F.3d 536, 543 (3d Cir. 2005); *In re TMI*, 89 F.3d 1106, 1117 (3d Cir. 1996).  In the context of summary judgment, a court must determine whether a plaintiff seeking the doctrine's benefit has put forth sufficient evidence to show that (i) "defendants engaged in affirmative acts of concealment designed to mislead the plaintiff[] regarding facts supporting [his or her] . . . claim"; (ii) "plaintiff[] exercised reasonable diligence"; and (iii) plaintiff was not aware, nor should have been aware, "of the facts supporting [his or her] claim until a time within the limitations period measured backwards from when the plaintiff[] filed [his or her] complaint." *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000).

### A.  Affirmative Acts of Concealment

Officers Chichearo and Winscom argue that Mr. Gaddy has not put forth any evidence that either officer actively misled him.  Furthermore, Officers Chichearo and Winscom assert that there is no evidence Officer Chichearo provided false testimony at the Hearing concerning the presence of other witnesses.  Mr. Gaddy argues that Officer Chichearo actively misled him by (i) testifying at the Hearing that Officers Chichearo and Winscom were the only witnesses to the incident, (ii) testifying that Mr. Gaddy was on foot when struck by the police vehicle, and (iii) failing to uphold his duty to tell the whole truth at the Hearing.  Mr. Gaddy also argues that

Officers Chichearo and Winscom actively misled him when detailing on their Incident Reports that Mr. Gaddy was on foot when he was struck by the police vehicle.

First, Mr. Gaddy has not presented the Court with sufficient evidence to find that Officer Chichearo provided false or misleading testimony at the Hearing concerning the presence of other witnesses. At the Hearing, counsel for Mr. Gaddy at the time and Officer Chichearo had the following exchange:

Q [Counsel]. You pursued him down the alleyway in your vehicle?

A [Officer Chichearo]. Yes

Q [Counsel]. Then you said you hit him?

A [Officer Chichearo]. Yes, with the side of my vehicle.

Q [Counsel]. What do you mean side of your vehicle?

A [Officer Chichearo]. Passenger front quarter panel.

Q [Counsel]. He was running. You caught up to him and you hit him. When you hit him, then he fell to the ground?

A [Counsel]. Yes.

Q [Counsel]. Were there any other people in this alleyway?

A [Officer Chichearo]. No.

Q [Counsel]. Just the three of you?

A [Officer Chichearo]. Yes.

Opp'n to Mot. for Summ. J. Ex. 1 at 11:7-21. Mr. Gaddy argues that based on this testimony Officer Chichearo misled him concerning the existence of potential witnesses. There is no evidence in the record, however, that conflicts with Officer Chichearo's testimony concerning the presence of other witnesses at the time the police vehicle struck Mr. Gaddy. Officer

Chichearo was not asked whether there were other individuals present *after* he struck Mr. Gaddy with his police vehicle. Rather, counsel asked Officer Chichearo whether there were other individuals present *at the time* Officer Chichearo struck Mr. Gaddy with his vehicle. The record does not contain any evidence suggesting that Officer Chichearo's testimony was false. Rather, Mr. Gaddy has only presented evidence that there were other individuals present in the alleyway *after* Mr. Gaddy was struck by the police vehicle. Accordingly, the Court determines that no reasonable jury could find that Officer Chichearo gave false or misleading testimony concerning the presence of other witnesses.

Second, Mr. Gaddy has not presented sufficient evidence to show that he justifiably relied on Officers Chichearo and Winscom's reports and Officer Chichearo's testimony stating that Mr. Gaddy was on foot at the time he was struck by the police vehicle. Even assuming that Officers Cheacharo and Winscom did actively mislead Mr. Gaddy by reporting and testifying that Mr. Gaddy was on foot when struck by the police vehicle, Mr. Gaddy has not explained how this precluded him from investigating the facts relating to his claims. It is undisputed that Mr. Gaddy knew he was struck by a police vehicle. Whether Mr. Gaddy was struck while on foot or while on a bicycle does nothing to alter Mr. Gaddy's knowledge of what transpired once he was already on the ground.[3] Mr. Gaddy argues that the Defendants' false statements concerning the bicycle are crucial because he was not aware the Defendants were not testifying truthfully until he received an unsolicited letter in early 2013 informing him he was on a bicycle when struck by Officer Chichearo's vehicle.[4] However, the record is clear that at the Hearing, Mr. Gaddy's counsel repeatedly asked Officer Chichearo whether Mr. Gaddy was on a bicycle.

[3]        The only claims still pending in this action concern the events after Mr. Gaddy was already struck by the police vehicle.

[4]        The early 2013 letter referenced by Mr. Gaddy in his deposition is not part of the record.

*See* Opp'n to Mot. for Summ. J. Ex. 1 at 10:23-25, 14:11-14.  It appears, therefore, that less than two months after the incident, Mr. Gaddy and his counsel were aware of the potential discrepancy with regard to the bicycle.  Therefore, Mr. Gaddy was on notice no later than November 17, 2011 (the date of the Hearing), that Officer Chichearo might not have been fully accurate, or, as Mr. Gaddy would likely argue, might not have been telling the whole truth.  Accordingly, the Court determines that no reasonable jury could conclude that Mr. Gaddy justifiably relied on the Defendants' statements concerning the bicycle, or, more precisely, no bicycle.

Third, Mr. Gaddy has not shown that Officer Chichearo had any obligation at the Hearing to testify to the use of force used on Mr. Gaddy once he was on the ground when neither the Assistant District Attorney nor Mr. Gaddy's counsel inquired of the officer about that use of force.  Officer Chichearo had a duty to tell the truth at the Hearing.  *See* Pa. R. Evid. 603.  When presenting evidence to demonstrate the existence of probable cause (which is, after all, the purpose of a preliminary hearing), state actors owe a duty pursuant to the Constitution not to "knowingly and deliberately, or with a reckless disregard for the truth, [make] false statements or omissions that create a falsehood" when "such statements or omissions are material, or necessary, to the finding of probable cause."  *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (internal citations and quotation marks omitted).  The Third Circuit Court of Appeals has held that "omissions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'"  *Id.* at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Here, Officer Chichearo was testifying at a preliminary hearing.  The purpose of a preliminary hearing is to determine whether there is sufficient evidence to support the charges

brought against a defendant. *See Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991).

Mr. Gaddy has not shown that Officer Chichearo had an affirmative duty to testify unsolicited by any counsel or the court to the use of force used on Mr. Gaddy once he was on the ground, and the Court finds that there was no such affirmative duty. First, Officer Chichearo was not asked about using force on Mr. Gaddy once Mr. Gaddy was already on the ground. Second, the force used on Mr. Gaddy once he was on the ground is not information a reasonable person would think a judge needed to know when determining whether there was sufficient evidence to support the charges brought against Mr. Gaddy. Because, the "[m]ere silence in the absence of a duty to speak . . . cannot suffice to prove fraudulent concealment," *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. 1992) (citing *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. 1989)), the Court determines that no reasonable jury could conclude that Officer Chichearo's testimony actively misled Mr. Gaddy.[5]

### B. Exercise of Reasonable Diligence

Even if Mr. Gaddy were able to show that Officers Chichearo and Winscom actively misled him, Mr. Gaddy would still not be entitled to the benefits of the doctrine of fraudulent concealment because he did not exercise reasonable diligence in pursuing his claims. "To demonstrate reasonable diligence, a plaintiff must establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) (internal quotation marks and citation omitted).

---

[5] Mr. Gaddy's argument that Officer Chichearo actively misled him by failing to disclose the presence of witnesses after Mr. Gaddy was knocked to the ground fails for the same reasons. Officer Chichearo was not asked about the presence of witnesses after Mr. Gaddy was struck by the police vehicle and whether or not additional witnesses later appeared is not information a reasonable person would think a judge needed to know when determining whether there was sufficient evidence to support the charges brought against Mr. Gaddy.

Reasonable diligence is an objective test that is "sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine*, 870 A.2d at 858 (citation omitted).

Officers Chichearo and Winscom argue that Mr. Gaddy did not exercise reasonable diligence in pursuing his claim because Mr. Gaddy testified at his deposition that he did not really listen during the Hearing and that Officer Chichearo's Hearing testimony did not influence him to pursue a lawsuit. Mr. Gaddy asserts that he diligently pursued his claim by requesting his criminal discovery file from the Defender Association of Philadelphia in May and June 2012 and by attempting to follow up on an unsolicited letter he received in 2013 informing him that he was on a bicycle on September 20, 2011 when the police vehicle knocked him to the ground.

The parties agree that the incident transpired in Mr. Gaddy's own neighborhood. Furthermore, the record shows that, as of November 17, 2011, Mr. Gaddy and his counsel were aware of a potential discrepancy concerning Officer Chichearo's testimony that Mr. Gaddy was on foot when hit by the police vehicle and Mr. Gaddy's possible recollection (or that of others supplying information to Mr. Gaddy and his counsel) that he was on a bicycle. Mr. Gaddy, therefore, had reason to believe by November 17, 2011 that Officer Chichearo may not have been accurate or telling the whole truth concerning Mr. Gaddy's encounter with the police on September 20, 2011. Given that the events transpired in Mr. Gaddy's neighborhood, Mr. Gaddy could have begun searching for witnesses to the incident at that point in time. The Court does not find it credible that Mr. Gaddy did not truly understand the Defendants' statements were "not adding up" until he received a letter in early 2013 corroborating his existing belief that he was on a bicycle at the time he was struck by the police vehicle. Mr. Gaddy has not sufficiently explained why he waited until after receiving this letter to enlist his father to help him search for

witnesses to the incident. Mr. Gaddy could have just as easily enlisted his father to help him uncover what happened after he first suspected Officer Chichearo was not completely truthful in his testimony.[6]

The Court recognizes that Mr. Gaddy was in custody during much of, if not all of, the limitations period and "that physical confinement can limit a litigant's ability to exercise due diligence." *Schlueter v. Varner*, 384 F.3d 69, 75 (3d Cir. 2004). However, as in *Schlueter*, Mr. Gaddy demonstrated the ability to enlist his family members' assistance in investigating his potential claims while in custody. Accordingly, the fact of Mr. Gaddy's imprisonment does not alter the Court's conclusion that, with reasonable diligence, Mr. Gaddy could have identified witnesses to the alleged beating prior to the expiration of the limitations period.

Because Mr. Gaddy has not presented sufficient evidence for a reasonable jury to conclude that he (i) justifiably relied on any affirmative acts by Officers Cheachero or Winscom or (ii) pursued his claims with reasonable diligence, the Court finds that fraudulent concealment is not applicable to toll the statute of limitations. Accordingly, Mr. Gaddy's claims are barred by the applicable statute of limitations.

---

[6] Mr. Gaddy stated in his deposition that he did not ask his father to start investigating until after receiving letters from alleged witnesses because that is when he heard for the first time he was assaulted after getting hit by the police vehicle. *See* Opp'n to Mot. for Summ. J. Ex. 5 at 70:18-72:4. This does not excuse the fact that Mr. Gaddy did not start fully investigating what occurred on the day of the incident as soon as he had notice Officer Chichearo might not have been telling the truth about what transpired. Furthermore, given the fact that Mr. Gaddy was unconscious during the alleged assault, he should have been even more motivated to learn about the events in question by combing the environs for witnesses and such.

**V.** **CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary

Judgment.

*       *       *

An appropriate order follows.


BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE